# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

—————————————————————
:
JACQUELINE ALINOSKI,                           :
:
:
Plaintiff,                      :
:         Civil Action No. 3:15-CV-0640
v.                             :
:
MUSCULOSKELETAL                                :         (Judge Kosik)
TRANSPLANT FOUNDATION INC.,        :
:
:
Defendant.                   :
—————————————————————

## MEMORANDUM

This is an action in employment discrimination under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq*. Plaintiff, Jacqueline Alinoski, ("Plaintiff") alleges that Defendant, Musculoskeletal Transplant Foundation Inc., ("Defendant" or "MTF") discriminated against her by engaging in disparate treatment and creating a hostile work environment. MTF has filed a motion for summary judgment under Federal Rule of Civil Procedure 56(c), arguing that there is no genuine issue as to any material fact. (Docs. 19 and 20). MTF also contends that it had a legitimate, non-discriminatory reason for terminating Plaintiff. For the reasons that follow, the Court will grant MTF's motion.

### I. BACKGROUND

On March 15, 2010, Plaintiff began working for MTF as a Quality Assurance Analyst ("QA Analyst") at MTF's Jessup, Pennsylvania location. (Doc. 19-3, Def.'s SOF ¶3). MTF, a non-profit service organization, and the largest musculoskeletal tissue bank in the United States,

recovers, processes, and distributes bone and other tissue for transplantation in orthopedic and other surgical applications.  (Id. at ¶4).  As a QA Analyst, Plaintiff was required to ensure that the documentation review performed for the release of tissue and medical devices was according to current MTF procedures and in compliance with applicable regulations. (Id. at ¶6).  The release of such tissue and medical devices by a QA Analyst is herein referred to as "dispositioning." Kathie Elechko was Plaintiff's supervisor when Plaintiff first began at MTF, and in February 2012, Paul Blackwell became Plaintiff's supervisor.  (Id. at ¶¶ 10, 11).

While employment at MTF is at-will, it maintains a progressive discipline system and disciplines employees depending on the severity of each particular infraction (Id. at ¶ 14).  Where an infraction is deemed serious, such as severe disposition errors, the employee may be accelerated through the discipline process more quickly or terminated immediately (Id. at ¶ 17).

### A. Plaintiff's Dispositioning Errors

Between December 2011 and December 2012, Plaintiff made four (4) tissue dispositioning errors.  (Id. at ¶ 90).  Specifically, on December 2, 2011 and May 9, 2012, Plaintiff incorrectly dispositioned as Aseptic, or for release, tissue from two donors, both of which had positive sterility results which contained infectious organisms and posed a serious risk of infection or disease transmission.  (Id. at ¶ 91).  This resulted in MTF having to recall the incorrectly dispositioned tissue from the market and reporting the incident to the U.S. Food & Drug Administration.  (Id. at ¶ 92).  In January 2013, it was discovered that Plaintiff had made a third dispositioning error for which she was placed on probation after having a counseling discussion with Mr. Blackwell and receiving a warning letter for the disposition errors.  (Id. at ¶ 98).  Finally, in April 2013, after discovering that Plaintiff had a fourth dispositioning error, a

review of Plaintiff was conducted by Mark Spilker, Executive Vice President, Research &

Development, Quality Assurance and Regulatory Affairs of MTF.  (Id. at ¶¶ 106, 120-22).  Upon

reviewing the dispositioning errors, the discipline Plaintiff had received to date, and her

performance reviews, Mr. Spilker decided to terminate Plaintiff's employment on account of her

performance issues.  (Id. at ¶¶ 120-22).

### B. Plaintiff's Age, Sex, and Harassment Allegations

Plaintiff alleges that throughout her employment at MTF, she was continuously harassed

and discriminated against by younger, male employees and that her complaints of the same to her

supervisor, Mr. Blackwell, and Human Resources, were not appropriately handled.  (Doc. 23, at

2).  Plaintiff reported that: (1) Joe Korea, a male QA Analyst over the age of 40, accused her of

doing everything "ass backwards," acting like a "victim," and having a "brain melt down"; (2)

Eric Phillips, another male QA Analyst under the age of 40, screamed "F**ck you" to her; and

(3) either or both Mr. Korea and Mr. Phillips placed a spider in her soda bottle, turned her

computer tower upside down at her workstation, and placed a pamphlet on her desk entitled

"How to Handle Criticism and Controversy."  (Id. at 2, 3).

In regards to Mr. Blackwell, Plaintiff provides that Mr. Blackwell: (1) scrutinized her

every movement during cigarette breaks; (2) treated Mary John Wierbowski, a female QA

Analyst over 40 and 14 years older than Plaintiff, more favorably than Plaintiff; (3) treated Jerry

Scott, a male QA Analyst over 40 and 10 years older than Plaintiff, more favorably than Plaintiff;

(4) treated Beth Gallagher and Colleen Kelly, both QA Analysts under the age of 40, more

favorably than Plaintiff; (5) allowed Mary John Wierbowski, Beth Gallagher, Colleen Kelly and

Jerry Scott to alter their work hours while later revoking Plaintiff's similar request; (6) allowed

Beth Gallagher and Colleen Kelly to make up work hours missed as opposed to using paid time off ("PTO") until Mr. Blackwell discontinued this practice across the board to all QA Analysts; and (7) was treated differently in the progressive discipline process. (Id. at 3-5).

In response to Mr. Phillips' profanity, Mr. Blackwell discussed the incident with Plaintiff and told her that he would address the situation with Mr. Phillips and thereafter, Mr. Phillips did not use any other profanity towards Plaintiff after that incident. (Doc. 19-3, Def's. SOF ¶¶33-39). Additionally, Mr. Blackwell told Plaintiff he would look into who placed the Conflict and Confrontation pamphlet that was left on her desk. (Id. at ¶86). The other incidents Plaintiff complained of concerning Mr. Phillips and Mr. Korea occurred before the time Mr. Blackwell was Plaintiff's supervisor. (Doc. 25, at 6). As for the progressive disciplinary process, MTF notes that the QA Analysts Plaintiff points to, were at different stages in the progressive disciplinary process than she, and therefore, each received the proportionate discipline in relation to the gravity of the error and stage he or she was at in the disciplinary process. (Doc. 25, at 9, 10).

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if there is sufficient evidence with which a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing Anderson, 477 U.S. at 248). A factual dispute is "material" if it might affect the outcome of the case.

Anderson, 477 U.S. at 248.  In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the non-moving party.  Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3d Cir. 2001); White v. Westinghouse Elec, Co., 862 F.2d 56, 59 (3d Cir. 1988).

A party seeking summary judgment always bears the initial burden of informing the court of the basis of its motion and identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The non-moving party then has the burden to "come forth with 'affirmative evidence, beyond the allegations of the pleadings,' in support of its right to relief."  U.S. Bank, Nat'l Ass'n v. Greenfield, Civ. Action No. 1:12-CV-2125, 2014 WL 3908127, *2 (M.D. Pa. Aug. 11, 2014) (quoting Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004)).  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," a court may grant summary judgment or consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2-3).

### III. DISCUSSION

Plaintiff brings suit against Defendant, alleging that her discharge from employment with MTF constituted age and sex discrimination in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq*., ("PHRA").[1]  Additionally, Plaintiff alleges a claim of hostile work environment.

---

[1] The Court notes that Plaintiff's PHRA claims are subject to the same analysis as Title VII claims and thus, analysis under Title VII applies with equal force to PHRA claims. Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1084 (3d Cir. 1995); Ostrowski v. Prudential Equity Grp., LLC, 2006 WL 1330113 (M.D. Pa. May 12, 2006).

### A. Age and Sex Discrimination Claims

It is an unlawful employment practice for an employer to discharge or discriminate against any individual because of the individual's age, if the individual is over 40, or on the basis of the individual's sex. 43 P.S. §§ 955(a) and 954(h).  Such discrimination claims may be established by either direct or indirect evidence.  Torre v. Casio, Inc., 42 F.3d 825 (3rd Cir. 1994).

> Direct evidence, if believed by the trier of fact, proves the existence of the ultimate fact in issue, *i.e.,* an adverse employment action arising from age-based animus, without inference or presumption, while indirect evidence requires the trier of fact to infer discrimination based upon the circumstances surrounding the adverse employment action.

Connors v. Chrysler Fin. Corp., 1997 WL 799459, at *5 (E.D. Pa. Dec. 31, 1997) (citations omitted).

A plaintiff seeking to prove discrimination based upon indirect evidence must utilize the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this analysis, a plaintiff must establish a *prima facie* case, which, if successful, raises an inference of discrimination.  Keller v. Ortix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997).  To do so, a plaintiff must demonstrate that she (1) is in the protected class, *i.e.,* is at least 40 years old; (2) was qualified for the position at issue; (3) suffered an adverse employment action; and (4) was ultimately replaced, or the position was filled, by a person sufficiently younger to permit an inference of age discrimination.  Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992); Jones v. Sch. Dist. of Phila., 198 F.3d 403 (3d Cir. 1999); see Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1066 n.5 (3d Cir. 1996).  A

6

plaintiff can also satisfy the fourth element by "showing that similarly situated non-protected employees were treated more favorably." Whitesell v. Dobson Communications, 2008 WL 474270, *9 (W.D. Pa. Feb. 20, 2008) (citing Clayton v. Meijer, Inc., 281 F.3d 605, 610 (6th Cir. 2002)). In satisfying the initial burden, a plaintiff need only "produce evidence that is sufficient to convince a reasonable fact-finder to find all of the elements...." Keller, 130 F.3d at 1108. If the plaintiff proves her *prima facie* case of discrimination, the burden of production then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the adverse action." Ostrowski v. Prudential Equity Grp., LLC, 2006 WL 1330113, *7 (M.D. Pa. May 12, 2006).

Finally, if the employer specifies a reason for its action, the plaintiff must then prove that the employer's articulated reason for the adverse employment action was a pretext for unlawful discrimination. McDonnell Douglas, 411 U.S. at 804. In order to avoid summary judgment at this stage, the plaintiff must present "some evidence, direct or circumstantial, from which a fact-finder could reasonably either: (1) disbelieve the employer's articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). In doing so, the plaintiff must point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them 'unworthy of credence' " and thus infer that the employer's proffered nondiscriminatory reason was not the motivator for the employer's action. Fuentes, 32 F.3d at 765 (quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992)). Put simply, a plaintiff "must show not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." Keller, 130

7

F.3d at 1109.

In the instant matter, the parties do not contest the first three prongs of Plaintiff's *prima facie* case.  Plaintiff is a female and over 40 years old, qualified for the job in question, and suffered an adverse employment action.  As for the fourth prong, the parties dispute whether Plaintiff has submitted evidence of circumstances supporting an inference of discrimination or that similarly situated persons not of her protected class were treated more favorably than she.

**i. Inference of Age Discrimination**

To support her "inference of discrimination" argument, Plaintiff sets forth that two younger female individuals under 40 years old, Beth Gallagher and Colleen Kelly, received "multiple advantages in the work place in comparison to Plaintiff[]."  (Doc. 23, at 10). Specifically, Plaintiff submits that both were allowed to change and maintain their hours of work while Plaintiff's similar request was eventually revoked.  (Doc. 23 at 4-5, 11; Defendant's Ex. "M" at 14-15).  Moreover, Plaintiff asserts that both were allowed to make up hours missed as opposed to PTO, and that Colleen Kelly was not required to work mandatory overtime.  (Doc. 23, at 4-5, 11).

Defendant counters by first pointing out that Plaintiff's comparators proves she was not subjected to discrimination.  Defendant points to individuals within Plaintiff's own protected classes that were treated more favorably than Plaintiff.  Specifically, Defendant asserts that Mary John Wierbowski, a female QA Analyst over 40 years old and 14 years older than Plaintiff, and Jerry Scott, a male QA Analyst over 40 years old, were also permitted to work flexible hours and excused from mandatory overtime.  (Doc. 20, at 7; Doc. 25, at 4).  Defendant further states that the use of PTO was discontinued across the board for all QA Analysts.  Moreover, Defendant

8

points to two former employees of MTF, Joe Korea and Frank McDonald, both male QA

Analysts under the age of 40, who were discharged after committing fewer errors than Plaintiff.

(Doc. 20, at 7).  Defendant argues that Plaintiff received more preferential treatment compared to

her male counterparts because she received more steps of progressive discipline than they did

prior to her termination.  (Doc. 20, at 7).

Defendant argues that Plaintiff cannot selectively choose a comparator who is not

similarly situated to her. (Doc. 20, at 8).  Specifically, Defendant alleges that Plaintiff's

comparisons to Colleen Kelly, Beth Gallagher, Jerry Scott, and Mary Jon Wierbowski fails

because these individuals were at different stages of MTF's progressive discipline system than

Plaintiff.  Id.  Because of their differing levels on the progressive discipline program, they were

not under similar circumstances and therefore, not appropriate comparators.

We agree with Defendant.  In an age discrimination action, it is the employee's burden to

demonstrate that similarly situated persons were treated differently; that is to say, that similarly

situated nonmembers of a protected class were treated more favorably than a member of the

protected class.  Simpson v. Kay Jewelers, Div. of Serling, Inc., 142 F.3d 639, 647 (3d Cir.

1998).  However, a plaintiff cannot "pick out one comparator [treated more favorably] amid a sea

of persons treated the same as her to establish a jury question."  Jafar v. Kings College, 2006 WL

1864591, at *6 (M.D. Pa. June 30, 2006) (citing Simpson, 142 F.3d at 646); see Warfield v.

SEPTA, 460 F. App'x 127, 130 (3d Cir. 2012).  Further, a decision that adversely affects an older

employee is not *ipso facto* a discriminatory decision merely because one younger employee is

treated differently.  Simpson, 142 F.3d at 646.

In Simpson, after a female store manager was demoted, she filed an age discrimination

suit alleging that another similarly situated, but younger, manager was not demoted despite the comparator having lower scores than she.  <u>Simpson v. Kay Jewelers, Div. of Serling, Inc.</u>,142 F.3d 639 (3d Cir. 1998).  The court found that this evidence could not be "viewed in a vacuum," and that she could not simply "choose a person she perceives as a valid comparator who was allegedly treated more favorably, and completely ignore a significant group of comparators who were treated equally or less favorably than she."  <u>Id</u>. at 646.

In the case before us, Plaintiff has failed to demonstrate an inference of discrimination on account of her age.  The record reflects on a whole that employees both within and outside of Plaintiff's class, were treated more and less favorable than Plaintiff.  Specifically, Mary Jon Wierbowski, a female employee of MTF, 14 years older than Plaintiff, and Jerry Scott, 10 years older than Plaintiff, were permitted to work flexible hours just as Beth Gallagher and Colleen Kelly, who are both under the age of 40.  Ms. Wierbowski was also excused from mandatory overtime and allowed to "make up" missed time rather than use her PTO.  Importantly, the practice of allowing the "make up" of missed time rather than using PTO was discontinued across the board as to all QA Analysts.  Moreover, Frank McDonald and Joe Korea, both under 40 years old, were discharged after committing fewer errors and receiving fewer warnings than Plaintiff.  (Doc. 20, at 7).  The purportedly similarly situated employees Plaintiff points to were all at different stages of MTF's disciplinary system.  As such, Plaintiff fails to establish a *prima facie* case based on age discrimination.

### ii. Inference of Sex Discrimination

Plaintiff also alleges that her male counterparts received greater advantages at MTF than she, thus raising an inference of sex discrimination to support the fourth prong of her *prima facie*

case.  Plaintiff argues that Eric Phillips and Joe Korea, both male employees, were permitted to harass Plaintiff "without repercussion."  (Doc. 23, at 12).  In support of the same, Plaintiff alleges that her male supervisor, Paul Blackwell, permitted and advanced such harassing behavior by Eric Phillips and Joe Korea.  For example, Plaintiff avers that Mr. Korea accused her of doing everything "ass backwards," of acting like a "victim," and having a "brain melt down."  (Doc. 23, at 13).  She further points out that either Mr. Korea or Mr. Phillips placed a spider in her soda bottle, turned her computer tower upside down, and placed a pamphlet on her desk entitled "How to Handle Criticism and Controversy."  (Doc. 23, at 13).  Plaintiff also states that Mr. Phillips shouted "F**ck you" to her.  (Doc. 23, at 13).  Despite all of this, Plaintiff argues that Mr. Blackwell did nothing to reprimand her co-worker's actions.  (Doc. 23, at 14).

Defendant counters that none of these acts by Mr. Korea or Mr. Phillips evidences a discriminatory animus on account of Plaintiff's status as a woman.  Moreover, contrary to Plaintiff's assertion that Mr. Blackwell did nothing to appropriately discipline her male counterparts, Defendant states that Mr. Blackwell told her that he would address the issues she complained of and that after this, no further incidents occurred.  Additionally, Defendant identifies that all but the pamphlet and profanity incidents occurred when Kathie Elechko was Plaintiff's supervisor, and not Mr. Blackwell.

We find the above cited incidents by Plaintiff to be severely lacking in any discriminatory animus based upon Plaintiff's gender.  Unlike the defendant in Ostrowski, supra, wherein the female employee was told "this is a man's business.  It's a man's world," or where she was repeatedly referred to by other males as a "bitch[]," Plaintiff's assertions and the evidence before us is insufficient to support an inference of discrimination based on Plaintiff's gender.

11

Accordingly, Plaintiff fails to establish a *prima facie* case based upon gender discrimination.

### iii. Pretext

Even assuming, *arguendo*, that Plaintiff did satisfy her burden of production required under McDonnell Douglas, the Plaintiff has not presented some evidence from which a fact-finder could reasonably either: (1) disbelieve Defendant's facially legitimate reason for the adverse employment action; or (2) believe than an invidious discriminatory reason was more likely than not a motivating or determinative cause of Defendant's action, in order to survive Defendant's motion for summary judgment.  Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

Defendant asserts that Plaintiff's employment was terminated in April 2013 "upon discovering that she had made her fourth dispositioning error in the span of 12 months."  (Doc. 25, at 7).  Defendant points out that 2 of these errors required MTF to notify the FDA, and a recall was ordered.  (Doc. 20, at 12).  MTF further states that Plaintiff was disciplined in accordance with its progressive discipline system.  (Doc. 20, at 12).  Even more, Defendant shows that the Plaintiff herself admitted to the dispositioning errors that resulted in her termination.  In fact, Plaintiff's own deposition reveals that if she had been able to review the donor chart to see her mistakes, she stated, "I don't think we would be sitting here right now, because I needed to see what I did wrong ... I would have accepted my severance package and walked away."  (Doc. 19-3, at 25; Alinoski Dep., at 183:2-15).

While Plaintiff does not dispute that she made these errors, she argues that Defendant's proffered reason is pretext, because she did not make any *additional* dispositioning errors while she was on probationary status, but rather, she was terminated for dispositioning errors MTF discovered prior to her being placed on probation.  (Doc. 23, at 17).  Specifically, Plaintiff argues

that Mr. Blackwell went "searching" for dispositioning errors that he could use to terminate her while she was on probationary status.  (Doc. 23, at 17).

Plaintiff has fallen short of showing not merely that the "employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." Keller, 130 F.3d at 1109.  Specifically, Plaintiff has not produced adequate evidence to contradict Defendant's assertion that Plaintiff was fired for poor job performance.  To be sure, Defendant's legitimate, nondiscriminatory reason has been consistent and uncontradicted from the beginning: Plaintiff was terminated due to her inability to perform her job satisfactorily.  The fact that dispositioning errors committed prior to Plaintiff being placed on probation were used to terminate Plaintiff do not point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason."  Moreover, Plaintiff's allegations that Mr. Blackwell went "searching" for reasons to terminate Plaintiff's employment is of no consequence, as it was not Mr. Blackwell that terminated her employment; rather, it was Mr. Spilker who terminated her employment after he had conducted a review of her dispositioning errors, disciplinary history, and performance review.  (Doc. 25, at 9).

Plaintiff has failed to point to evidence from which the trier of fact could conclude that the dispositioning errors (which she admits to making) was a pretext for unlawful age or sex discrimination.  Therefore, her age and sex discrimination claims will be dismissed.

### B. Hostile Work Environment Claim

Plaintiff also alleges that she was subjected to a hostile work environment.  A hostile work environment claim requires an employee to show that (1) the employee suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the

13

discrimination detrimentally affected the employee; (4) the discrimination would detrimentally affect a reasonable person of the same protected class; and (5) the existence of *respondeat superior* liability.  Wood v. Univ. of Pittsburgh, 395 F. App'x 810, 815 (3d Cir. 2010) (citing Andreoli v. Gates, 482 F.3d 641, 643 (3d Cir. 2007)).  Title VII "does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] ... because of ... sex.' " Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998).  "Teasing, offhand comments and isolated incidents do not rise to the level necessary to maintain such a claim." Whitesell, 2008 WL 474270, at *16 (citing Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).  The claim "must be assessed with respect to the totality of the circumstances."  Sherrod v. Phila. Gas Works, 209 F.Supp.2d 443, 451-52 (E.D. Pa.2002).

Plaintiff argues that she suffered a pattern of abuse and harassment by her supervisor, Mr. Blackwell, and coworkers for a period of fourteen months, February, 2012 through April, 2013. (Doc. 23, at 19).  Specifically, Plaintiff contends that Mr. Blackwell refused to investigate actions taken against Plaintiff by co-workers (see A(ii), supra), and that Mr. Blackwell scrutinized her every moment, especially while on cigarette breaks.

Defendant points out that Plaintiff cannot establish a hostile work environment claim because she cannot establish that her gender or age was a motivating factor in the alleged treatment.  (Doc. 25, at 11).  We agree. To establish a *prima facie* case, the burden of proof is on the Plaintiff to produce some evidence that she was discriminated against on the basis of her sex or age.  There is simply no evidence to suggest that any of the events Plaintiff complains of were "pervasive and regular" or that the same were motivated by animus towards her gender or age. To be sure, Plaintiff's own deposition evidences that Plaintiff herself did not believe any of these

14

complained of incidents were motivated by an animus towards her gender or age:

> Q: Now, isn't it true that you never complained to anyone at MTF that you were being harassed because of your age?
>
> A: Because of my age?
>
> Q: Yes.
>
> A: Not that I can recall.
>
> Q: And isn't it true that you never told anyone at MTF that you felt that you were being harassed because you were a woman?
>
> A: Because – Harassed, not that I can recall for being a woman.

(Doc. 20, at 21; Alinoski Dep., at 128:5-129:24, 130:13-131:15, 154:14-19, 154:20-24).

Thus, even taking into consideration all of Plaintiff's incidents she complains of: her computer tower being turned upside down, finding a spider in her soda, the pamphlet on her desk, the "ass backwards," acting like a "victim," having a "brain melt down" and profanity comments, Plaintiff fails to show this alleged harassment was motivated by an animus towards her sex or age.  See Wood v. Univ. of Pittsburgh, 2009, WL 3400944, *1, 4 (W.D. Pa. Oct. 21, 2009) (aff'd, 395 F. App'x 810 (3d Cir. 2010)) (finding that the plaintiff failed to establish a *prima facie* case for hostile work environment when she alleged that defendants were tampering with her office and computer, were remotely accessing her computer at night, that she was treated disrespectfully, that defendants conducted a faulty investigation when she complained of harassment, and that the number "6666666" appeared repeatedly on her office calculator, because she failed to demonstrate how this evidence was based upon her sex).

Finally, Plaintiff's claim that she was subjected to excessive monitoring and scrutiny by

her supervisor Mr. Blackwell in regards to her cigarette breaks simply do not imply discrimination based upon sex or age.  Warfield, 460 F. App'x at 130 (stating that plaintiff's claim of being subjected to excessive monitoring and scrutiny, being yelled at and belittled by supervisor does not imply discrimination and thus, plaintiff failed to offer evidence establishing a *prima facie* case of discrimination).  At best, Plaintiff has alleged that she did not have an amicable relationship with her coworkers.  However, Title VII "does not set forth 'a general civility code for the American workplace.' "  Wood, 2009, WL 3400944, at *5 (citing Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).  Because Plaintiff has failed to produce evidence that the alleged harassment was based upon her sex or age, summary judgment is appropriate.

Finally, because Plaintiff has failed to establish a *prima facie* case, we need not address whether liability exists for MTF on Plaintiff's claims.

## IV. CONCLUSION

For the reasons set forth above, we will grant MTF's motion for summary judgment.  An appropriate order is attached.